The third case this morning, Koehn v. Delta Outsource Group. Good morning. May it please the court, my name is Andrew Thomason. I'm here on behalf of the appellate, Patricia Anne Koehn. This case rose under the Fair Debt Collection Practice Act that involved Delta Outsource Group's sending of an initial or first letter to Ms. Koehn, which sought to collect a static debt, a debt whose balance would never, ever increase. The district court should not have dismissed this case under Rule 12b-6 because the court found, and Delta concedes in its briefing, that the use of the temporal qualifier current to describe the debt's balance did not mean that the debt was static. In fact, they concede that the account may change with the passage of time, or the amount, I'm sorry, may change with the passage of time. So the question here, the real issue here, is whether change means the debt can reasonably be inferred. We want to do things to increase or decrease. The district court found that it was not reasonable to believe that the debt would increase over time, but rather that it would decrease. And it is our contention that, given the case law of this court and pure precedent within it and from other circuits and other courts, that it's reasonable to infer that a debt that was always dynamic and accruing interest in late fees and other charges would continue to do so unless the consumer's instructor told otherwise. Mr. Thomason, do you think you have an uphill battle against the backdrop of our decision in Barnes, which pretty clearly distinguishes the circumstances in Chew Way, which are not present here, right? You don't have a direction on this stunning letter to call an 800 number to get your balance. On Barnes, no, Your Honor, but Barnes is different because it sought to collect only part of the debt. In Barnes, there was a total amount of the debt, but the collector was only collecting the past due amount. And the letter actually went further and instructed the consumer that by paying the current amount due would stop all collection activity. So the consumer would know, any reasonable consumer would know that by paying that past due amount, that stopped the collection. Well, so too here. Well, here, given the context of the debt, consider from Ms. Cain's perspective that this was a high interest loan that had always been accruing interest, late charges, and other charges. Her first contact from Delta describes the debt as current. And Delta itself concedes that use of the temporal qualifier, current, does not mean the debt is static. The district court, in its decision, also found that use of the word current did not mean the debt was static. And in fact, that the amount of the debt may change over time. It would have been easy to comply for Delta to comply with the act. All the act requires is clarity. And all the act required them to say was, balance or amount due. And this instructs that as well, that when you step outside the bounds of two-way safe harbor and use extrinsic language, then you run afoul of the safe harbor. Now, the safe harbors are not written into the statute. Mr. Thomason, I understand your argument to be that the use of the word current implies that the balance could increase, right? Yes, Your Honor. Why isn't the same implication possible from just the use of the present tense verb, is? Your account balance is X. Doesn't that imply the same thing? I don't believe it does. Why not? Because it's telling you what it is right now. Currently. Currently. Yeah. And there's nothing that implies that it will be different going in the future. The word current implies that it is subject to change. And in fact, the defendant conceded that it would change. Everybody concedes it would change if she made payments and took it down, correct? Correct. Okay. But I would... I'm just, I'm not, the implication that you're drawing from the word current, I just don't understand why you can't draw that from the verb is. I just don't. And Your Honor, it's the court's instruction in Chiu Wayne. When selecting a static debt, all you need to do is say the balance and stop there. That's what this court instructed. That's what other courts have found. And this court, 14, 15 years ago in Taylor v. Calgary Financial Services, found that consumers generally understand that their debts, credit card debts, that were once dynamic, you know, continue to accrue interest. That they're going up. But that wasn't the case here. This case would never, ever go up. Or this amount of this debt would never go up. And the question here is, given the defendant's concession that it's the use of a temporal qualifier, current, which Chiu Wayne admonished against, why would it choose to use that word to describe a static debt when it concedes that it does not describe a static debt, but rather a dynamic one that will change over time? And may it please the Court, unless Your Honors have any questions for me, I'd like to reserve the balance of my time. Thank you, Counsel. Thank you. Thank you. Ms. Olson. May it please the Court, Katherine Olson on behalf of Defendant Apelli, Delta Outsource Group. Notwithstanding that there is no mention anywhere in the Dunning letter as to interest or fees, it is plain disposition that a significant fraction of consumers would nonetheless interpret the letter to mean that interest or other fees were accruing. Such an interpretation does not comport with the plain language in the letter when read as a whole. And precedent is pretty clear that bizarre interpretations should be disregarded when analyzing debt collection language under the FDCPA. To be clear, and as I think Counsel has made clear, there's no dispute in this case that the amount of the debt that was identified in the letter is accurate. There's also no mention of interest or fees were accruing on this debt. The FDCPA does not require any specific terminology to identify the amount of the debt. Thus the statute envisions that a multitude of phrases could be used to identify the debt and comply with the Act's purpose. Whereas here the Dunning letter correctly identifies the balance without any mention of interest or fees, I believe the phrase current balance should be found to comply with both section 1692G and 1692E as a matter of law. Simply speaking, and unlike 2A, there's nothing in this letter that would suggest that the current balance is different from the amount of the debt. Thus there is no reason to conclude that an unsophisticated consumer would interpret the phrase as anything else. Indeed, nothing about the word current on its own should suggest future implications as Counsel would have this panel believe, as the word by definition means occurring in or existing at the present time. To conclude, contrary to plaintiff's arguments, use of the phrase current balance on its own does not suggest or threaten that the debt will increase over time due to interest or other charges. Rather the phrase is clear enough for an unsophisticated consumer to understand it to refer to the amount of the debt. The circuit has long been careful not to conflate lack of sophistication with unreasonableness, and I respectfully request that that policy continue today by affirming the district court's decision. So what's the point of including the word current? Unfortunately, because this was decided at the pleading stage, there's nothing in the record that would show what the client's actual intentions were for using that word. However, I would assume, I would believe that the client was merely trying to convey to the consumer in a clear fashion that this is the amount that is presently due today. And as I mentioned, there's a different way of doing that though, right? You could just put it, you could put amount due, colon. You could put amount due. You could say due now. You could say balance of the debt. You could say the exact language of the statute, amount of the debt. Some of those, I don't know how a unsophisticated, well, I don't know how every unsophisticated consumer would do that. As the two-way court themselves mentioned, it is impossible to draft a letter that would be certain to be clear to every single consumer. And that is why this circuit and many courts have decided that a significant fraction of the population has to be misled to find liability. In this case, I don't think there's anything about the word current when considering that word on its own, which is what counsel is asking this court to do. I don't think there's anything that suggests that the balance will increase due to interest and other charges. That's a very specific, I guess, assumption just by using the word current. But why? I mean, let me ask you about that. Because suppose I have a credit card debt, I don't pay it, and I get a letter, a Dunning letter like the one here. And I say, oh, I recognize what that's for. That's for that credit card bill I didn't pay. Don't you think I'm also going to assume, well, that credit card had interest and fees that attach when I don't pay the bill on a timely basis? And when I see the Dunning letter and I see the word current on there, why is it not reasonable for me to assume, you know what, if I don't pay this thing quickly, it's only going to go up. It's not going to go down or stay the same. Because that's the way a credit card works. I understand that. And I guess my thought is, if an unsophisticated consumer truly believed that interest or other charges were accruing, and considering that consumers have a poor conception about debt collectors to begin with, I don't think that they would be vague about the fact that interest or other fees are accruing. I think if a person believed the debt collector wanted them to think that interest and other fees were accruing, they would just simply state that. They wouldn't be vague about it. In this case, just the word current, which again I think cannot be analyzed in isolation. I think you have to read the letter as a whole, and when the letter as a whole does not mention fees or interest, the word current by itself should not suggest or implicate future items accruing on the lower court's decision. Thank you. Thank you, Counsel. Thank you, Your Honors. To address a few points, my adversary suggested that there's nothing bizarre or that a significant fraction of the population would not be misled by the term current and believe that it was increasing. But this court, again, in Taylor v. Calvary, said that generally consumers understand that their credit card debts accrue with interest. And courts in other cases, we've cited a few, Islam, have stated that everyone, even adults, a dimwit, the most unsophisticated consumer, understands that credit cards and things like loans, they accrue interest. And where the consumers experience the debt of this type is that it's always been dynamic. It's always been... In the body of federal law, has anybody offered any evidence on this point? Evidence on the point... Like a consumer survey of different phrasing of letters. No. And in fact, the... And I cannot cite, Your Honor, a particular case at this moment, but I believe that in Chiu-Wei, they discuss Bartlett v. Heibl and Avila v. Rubin, both Seventh Circuit cases. All of those, including Chiu-Wei, only involved a 1619G claim. And they discussed it in the context of confusion being the standard. Right. It's an empirical question. Correct. And here, we have a 1692E claim as well. But the issue is not one only of confusion, it's of accuracy. And when a consumer's only experience with a debt is that it's always increasing, when a collector continues to... So I gather nobody has ever actually gathered any evidence on this point. Not that I'm aware of. In those cases discussed, there's no need for evidence because you can tell from the face of the letter whether it is accurate or not. And here, the defendant has in fact conceded that it is inaccurate to describe... I don't see that concession in the brief or in the argument. In the brief, at section three, they... Isn't that just an echoing of what the district court said, that if you pay the bill, the bill is going to go down? Judge Kogan in the Eastern District of New York in the Islam case, a good point. There's no need to tell a consumer that their current balance means that the debt will go down. Everyone knows that if you pay money on a debt, it will go down. Of course that's the result. So current cannot mean that by making a payment, the amount will go down. No, when you talk about the balance being static though and changing and your adversary having conceded that point, I mean, I don't see the concession either. I see the concession that, of course, the balance is going to decrease if there's some kind of installment payment made. But I don't... I mean, maybe I'm missing it, but I don't see the concession extending beyond that. No, the concession is simply that it will change at point three or section three. It could change for interest and fees, and they're not arguing that. It could change if there's an installment payment made. What are the other options? The other options, it is increasing, as it always did, because of interest and other charges. But they're not arguing that. They're not arguing that there's going to be interest and fees or anything or... No, but they did concede that the amount of the debt... The charge on the credit card debt. They did concede that the amount of debt may change with the passage of time. And I think it's a bit disingenuous, again, to say that current implies that it will change over time because you make a payment and it will go down. Why not? I get notices all the time where a payment may have crossed in the mail. That's normal, right? If your honors were to affirm the district court's decision, what you will find is that every debt collector, no matter what type of debt they're collecting, a dynamic or static debt, they will always describe it now as a current balance. So it sounds like, counsel, what you're saying is that the statute should be read as requiring the defendant to specify in that initial notice whether the debt is static or not, correct? It's very easy to do, and most collectors get it right. Does the statute expressly require that? No, it does not. But somehow, magically, most honest debt collectors do get it right. The debt collectors are told by their clients that this debt is static, it will not accrue interest. And when it does, they use this court safe harbor from Miller versus McKayla to inform the consumer that the amount of the debt will increase and why. And when it's static, they follow two-way by simply saying balance due or amount of debt. But here, it seems that the collector, and this court was sort of foreshadowing this decision of Antoia, has cleverly crafted their letter in a way to subtly get an advantage from the consumer. Antoia involved a much sneakier tactic than what we're talking about. The difference between the balance is and the current balance is. Oftentimes, the most effective tactics are not the most obvious. Is there no evidence anywhere in federal law about whether this is actually deceptive? There are decisions on this issue. That's not my question. Understood. I'm not aware, could not cite. Thank you. Today. Yes, Your Honor. Your time's up. Thank you. Thanks to both counsel. The case is taken under advisement.